IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KUREASE RENEE MORRIS,

         Plaintiff,

   v.

CAROLYN W. COLVIN, Acting
Commissioner Social Security
Administration,

         Defendant.

CIVIL ACTION FILE

NO. 1:14-CV-03639-JFK

## FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied her applications for disability benefits. For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **AFFIRMED**.

## I.    Procedural History

Plaintiff Kurease Renee Morris filed applications for disability insurance benefits and supplemental security income on January 6, 2011, alleging that she became disabled on August 14, 2010. [Record ("R.") at 17, 136, 141]. After her

applications were denied initially and on reconsideration, an administrative hearing was held on January 31, 2013. [R. at 17, 30-51]. The Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's applications on March 12, 2013, and the Appeals Council denied Plaintiff's request for review on September 13, 2014. [R. at 1-6, 17-24]. Plaintiff filed her complaint in this court on November 13, 2014, seeking judicial review of the Commissioner's final decision. [Doc. 3]. The parties have consented to proceed before the undersigned Magistrate Judge.

## II.    Facts

The ALJ found that Plaintiff has lupus, rheumatoid arthritis, and low back pain. [R. at 19]. These impairments are "severe" within the meaning of the Social Security regulations. [Id.]. However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 20]. The ALJ found that Plaintiff was capable of performing her past relevant work as a cashier, sales clerk, and leasing agent. [R. at 22-23]. The ALJ also found, in the alternative, that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. [R. at 23]. As a result, the ALJ concluded that Plaintiff had not

2

been under a disability at any time from August 14, 2010, the alleged onset date, through the date of the ALJ's decision.  [R. at 24].

The decision of the ALJ [R. at 17-24] states the relevant facts of this case as modified herein as follows:

The claimant was born on January 29, 1982, and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  (20 C.F.R. §§ 404.1563 and 416.963).  The claimant has at least a high school education and is able to communicate in English.  (20 C.F.R. §§ 404.1564 and 416.964).

The claimant is alleging disability based on the fatigue and swelling she experiences due to lupus and rheumatoid arthritis.  The claimant maintains that she is unable to stand for extended periods and that she experiences lupus flare-ups approximately once a week.  She contends that such flare-ups cause her to experience pain and swelling in her joints.  The claimant takes pain medication and prednisone for her pain.  She testified that her medication causes her to be extremely drowsy and that she takes an hour-long nap two to three times per day.

In December 2010, a rheumatoid arthritis diagnostic panel was found to be consistent with rheumatoid arthritis as well as lupus.  (Exhibit 1F).  Treatment notes from January 2011 noted that the claimant was tired looking but in no acute distress.

3

The claimant was prescribed the nonsteroidal anti-inflammatory medication Mobic and was recommended to follow-up with a rheumatologist. (Exhibit 3F).

The claimant has presented to the hospital with complaints of lupus flare-ups. However, physical examination notes reflect that she was in no acute distress and was able to move her extremities normally. The claimant ambulated with a steady gait and had normal vital signs, and the hospital discharged her in stable condition. (Exhibit 10F at 3-9). In December 2012, the claimant again received treatment for a lupus flare-up. Treatment notes reflect benign findings. The claimant had normal range of motion, normal strength, no tenderness, no swelling, and no deformity. She was discharged in stable condition with a prescription of prednisone. (Exhibit 13F).

Dr. Oluropo Ayeni performed a consultative examination of the claimant in September 2011. Although Dr. Ayeni assessed no functional limitations in his report, the claimant was noted to have a rather benign objective physical examination. The claimant exhibited normal range of motion of the back and had only mild 4/5 weakness of the bilateral upper grip strength. The claimant's gait was steady, and it was noted that she was able to get on and off the examination table without assistance. (Exhibit 7F).

4

The claimant testified that she is raising her four young sons, ages 12, 10, 8, and 6. Although the care for such young children is physically demanding, she does this without any assistance. The claimant has presented with complaints of lupus flare-ups on occasion. However, she was treated conservatively and physical examinations reveal little objective limitations. The claimant has past relevant work as a loader, leasing agent, cashier, certified nursing assistant, sales clerk, and chemical operations specialist. At the hearing, the vocational expert testified that an individual of the same age, education, vocational background, and residual functional capacity as the claimant would be able to perform the claimant's past relevant work as a cashier, sales clerk, and leasing agent. The vocational expert also testified that such an individual would be able to perform the requirements of representative occupations such as towel folder, tag inserter, and garment sorter.

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III.   Standard of Review

An individual is considered to be disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

5

expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See 42 U.S.C. §§ 423(d)(2) and (3).

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. at 1440. "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

"The burden is primarily on the claimant to prove that [s]he is disabled, and therefore entitled to receive Social Security disability benefits." <u>Doughty v. Apfel</u>, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).   Under the regulations as promulgated by the Commissioner, a five step sequential procedure is followed in order to determine whether a claimant has met the burden of proving her disability.  <u>See</u> <u>Doughty</u>, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that she is not engaged in substantial gainful activity.  <u>See</u> <u>id.</u>  The claimant must establish at step two that she is suffering from a severe impairment or combination of impairments.  <u>See</u> <u>id.</u>  At step three, the Commissioner will determine if the claimant has shown that her impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  <u>See</u> <u>Doughty</u>, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.   If the claimant is able to make this showing, she will be considered disabled without consideration of age, education, and work experience.  <u>See</u> <u>id.</u> "If the claimant cannot prove the existence of a listed impairment, [s]he must prove at step four that [her] impairment prevents [her] from performing [her] past relevant work."  <u>Doughty</u>, 245 F.3d at 1278.  "At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education,

AO 72A

(Rev.8/82)

and past work experience to determine whether the claimant can perform other work besides [her] past relevant work." Id.  If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  See 20 C.F.R. §§ 404.1520(a), 416.920(a).

## IV.   Findings of the ALJ

The ALJ made the following findings of fact:

1.   The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.

2.   The claimant has not engaged in substantial gainful activity since August 14, 2010, the alleged onset date.  (20 C.F.R. §§ 404.1571, *et seq.*, and 416.971, *et seq.*).

3.   The claimant has the following severe impairments: lupus; rheumatoid arthritis; and low back pain.  (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5.   The claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except: occasional push/pull; occasional climbing with respect to ramps and stairs; no climbing with respect to ladders, ropes, and scaffolds; frequent balancing; occasional stooping, kneeling, crouching, and crawling; frequent reaching, handling, and fingering; must avoid unprotected heights; occasional vibration; and no extreme temperatures.

8

6.      The claimant is capable of performing past relevant work as a cashier, sales clerk, and leasing agent.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. (20 C.F.R. §§ 404.1565 and 416.965).

7.      The claimant has not been under a disability, as defined in the Social Security Act, from August 14, 2010, the alleged disability onset date, through the date of the ALJ's decision.  (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

[R. at 17-24].

## V.      Discussion

Plaintiff Morris argues that the ALJ failed to apply the proper legal standard when evaluating Plaintiff's complaints of pain. [Doc. 10 at 6-13].  Plaintiff contends that the ALJ failed to articulate any reasons for discrediting her testimony and that the record evidence supports her subjective allegations. [Id.].  Plaintiff also argues that the ALJ failed to properly consider her medication side effects.  [Id. at 14-16].

When a claimant seeks to establish disability through subjective testimony of pain, a "pain standard" established by the Eleventh Circuit applies.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  The claimant can satisfy this standard by showing: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed

9

pain." <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing <u>Holt</u>, 921 F.2d at 1223).  "The 'pain standard' is applicable to other subjective symptoms as well." <u>Crow v. Comm'r, Social Security Admin.</u>, 571 Fed. Appx. 802, 807 (11th Cir. 2014) (citing <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210 (11th Cir. 2005)).  "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." <u>Wilson</u>, 284 F.3d at 1225 (citing <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The relevant Social Security regulations provide that factors which will be considered by the ALJ in evaluating a claimant's subjective symptoms include: (1) daily activities; (2) location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate her symptoms; (5) treatment received, other than medication, for the relief of symptoms; (6) measures used for the relief of symptoms; and (7) any other factors concerning the functional limitations and restrictions due to the claimant's symptoms.  <u>See</u> 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p.  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." <u>Foote v. Chater</u>, 67 F.3d 1553, 1562 (11th Cir. 1995) (citing <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1054 (11th Cir. 1986)).

10

In the present case, records beginning in 2009 show that Plaintiff has complained of pain in her knees, legs, ankles, and feet.  [R. at 340, 345, 363, 366, 371, 383].  Plaintiff was treated for pain in her knees and shoulders in December 2010 and January 2011, and her physician assessed her with positive joint pain most likely related to rheumatoid arthritis and possibly lupus.  [R. at 402-04].  Plaintiff was seen at the hospital for migraine headaches in September 2011 and for a migraine headache and back pain in October 2011.  [R. at 578, 584, 591].  In October, November, and December 2012, Plaintiff was seen at the hospital and the health clinic for complaints of multiple joint pain.  [R. at 463, 599, 623, 662].  As the ALJ noted, Plaintiff alleges "that she is unable to stand for extended periods and she experiences lupus flare-ups approximately once a week.  She contends that such flare-ups cause her to experience pain and swelling in her joints."  [R. at 21, 40-42].  Plaintiff also alleges that she experiences side effects from her medications.  Plaintiff reported that her pain medication puts her straight to sleep and that she naps for approximately an hour two to three times per day.  [R. at 45, 257].

The ALJ found that Plaintiff's medically determinable impairments, including lupus and rheumatoid arthritis, "could reasonably be expected to cause the alleged symptoms."  [R. at 21].  However, the ALJ also found that Plaintiff's "statements

11

concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." [Id.]. Despite Plaintiff's arguments to the contrary, the court finds that the ALJ offered a number of reasons supported by substantial evidence in the record for discrediting Plaintiff's subjective testimony.

One of the reasons offered by the ALJ in support of his credibility determination was Plaintiff's testimony regarding the care of her children. Plaintiff testified that she raises her four young sons, ages 12, 10, 8, and 6, without any assistance from others. [R. at 22, 34-35, 41-43, 231-32]. Plaintiff argues that the ALJ erred because her "'participation in everyday activities of short duration, such as housework, does not preclude a finding of disability.'" [Doc. 10 at 12-13 (quoting Lewis, 125 F.3d at 1441)]. However, as noted *supra*, an ALJ is required to evaluate a claimant's subjective allegations by considering her daily activities. See 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. And Plaintiff's testimony and reports indicate that she engages in more than simply everyday activities of short duration. Plaintiff reported that she gets her children ready for school, runs errands, cooks, cleans, washes clothes, and helps her children with their homework. [R. at 43, 231-32]. As the ALJ correctly noted, "The care for such young children is physically demanding, and the fact that the claimant cares for her children without any assistance is indicative that the claimant

12

retains the physical capabilities that exceed what she alleges." [R. at 22]. The undersigned finds that it was not improper for the ALJ to consider Plaintiff's daily activities in caring for her four young sons when evaluating the credibility of her subjective allegations of limitations caused by her impairments. See 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p.

Plaintiff testified at the administrative hearing that she has pain in her legs, knees, and feet and that she is unable to stand for extended periods. [R. at 21, 43-47]. However, she stated in a function report that she could walk half a mile before needing to rest for five minutes. [R. at 236, 258]. Plaintiff also has not cited to any evidence that she reported to her physicians that she had standing limitations or pain while walking, and records consistently indicate that Plaintiff ambulates with a normal and steady gait and that she has normal range of motion in her legs. [R. at 21, 436, 438, 440, 470, 472, 516]. Numerous treatment notes from various periods of time also reveal that, upon examination, Plaintiff was in no acute distress, she was able to move her extremities normally, and she had normal strength, no tenderness, and no swelling. [R. at 21-22, 436, 438, 440, 483, 494, 510, 522, 555, 572, 584, 593, 632, 649, 653, 664].

13

The ALJ noted that Plaintiff alleged that she experiences lupus flare-ups approximately once a week and that these flare-ups cause her to experience pain and swelling in her joints.  [R. at 21, 40-42].  The medical record, however, reveals that since her alleged onset date, Plaintiff was only treated for joint pain related to lupus on approximately six occasions beginning in late 2010.  [R. at 402-04, 463, 599, 623, 630, 662].  Many of these treatment records were specifically addressed by the ALJ in his decision.  [R. at 21].  The ALJ also cited to Plaintiff's conservative treatment in support of his credibility determination.  [R. at 21-22].  Although Plaintiff alleged that she experienced lupus flare-ups, treatment primarily consisted of prescribed steroidal and nonsteroidal anti-inflammatory medications.  [R. at 21-22, 257, 402-03, 435-36, 483, 625].  Plaintiff is incorrect when she asserts that "the ALJ failed to provide any reasons whatsoever in his decision to support" his credibility determination.  [Doc. 10 at 11].  A reasonable person would accept as adequate the evidence cited by the ALJ in support of his credibility determination.  Accordingly, the court finds that remand is not warranted on this basis.

Plaintiff also argues that the ALJ failed to properly consider the side effects of her medications.  [Doc. 10 at 14-16].  As previously noted, the relevant Social Security regulations provide that an evaluation of medication side effects is one of the seven

factors that an ALJ must consider in evaluating a claimant's credibility.  See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p.  "In the Eleventh Circuit, however, there is no requirement that all seven of these factors be discussed explicitly."  French v. Massanari, 152 F. Supp. 2d 1329, 1337 n.6 (M.D. Fla. 2001).  In the present case, the ALJ noted Plaintiff's subjective testimony, including her testimony about her medication side effects.  [R. at 21].  And as discussed *supra*, the ALJ offered numerous reasons supported by substantial record evidence for discrediting Plaintiff's subjective testimony.  The ALJ's finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of her symptoms were 'not entirely credible,' [was] a finding that encompassed her testimony about her side effects."  Walker v. Comm'r of Social Security, 404 Fed. Appx. 362, 367 (11th Cir. 2010).  "Therefore, it is not reversible error that the administrative law judge did not expressly mention the side effects of [Plaintiff's] medications in his credibility determination."  French, 152 F. Supp. 2d at 1337 n.6.

Moreover, the burden is on the claimant to "introduce evidence supporting her claim that her symptoms (including any medication side effects) make her unable to work[,]" and the court finds that Plaintiff has not carried this burden.  Walker, 404 Fed. Appx. at 366.  Plaintiff reported that her pain medication "knocks [her] out" and puts

AO 72A
(Rev.8/82)

her "straight to sleep" and that she takes a one-hour nap two to three times per day. [R. at 45, 257].   Plaintiff, however, cites to only two complaints to physicians regarding medication side effects. [Doc. 10 at 15]. One of Plaintiff's physicians noted in September 2011 that "Patient said that her pain medication only put her to sleep." [R. at 435].  And in a medical record from October 2012, it was noted that Plaintiff informed the physician that she "wants Prednisone only" because she had "tried Plaquenil and Methotrexate before but hair fell out."  [R. at 599].  But there is no indication that either of these two physicians was concerned about any medication side effects.  [R. at 435, 599].

The Commissioner also correctly notes that evidence in the record contradicts Plaintiff's allegations that her medications knock her out and put her straight to sleep. [Doc. 11 at 13].  For example, Plaintiff stated in a function report that she has "a hard time sleeping" and that she has not "been sleeping much, [she] stay[s] up all times of the night."  [R. at 45, 231-32, 257].  In addition, a friend of Plaintiff completed a third party function report and stated: "[Plaintiff] always call [sic] me and say [sic] she can't sleep.  In the day time when she takes a nap she'll call me and tell me [to] wake her up at a certain time, but when I call either she haven't went [sic] to sleep or she didn't

16

sleep long." [R. at 224].  This report contradicts Plaintiff's testimony that she naps for approximately an hour two to three times per day.  [R. at 45].

In summary, the court finds that Plaintiff has failed to "introduce evidence supporting her claim that her symptoms (including any medication side effects) make her unable to work."  Walker, 404 Fed. Appx. at 366.  The evidence in the record reveals that Plaintiff has the ability to care for her four young children with no assistance, and that according to Plaintiff's own reports, she gets her children ready for school, runs errands, cooks, cleans, washes clothes, and helps her children with their homework.  [R. at 43, 231-32].  Plaintiff has received conservative and infrequent treatment for her impairments, and physical examinations of Plaintiff consistently revealed relatively normal objective findings in such areas as strength, gait, and range of motion.  Finally, there is little evidence in the medical record supporting Plaintiff's claims of significant side effects from her medications.  For these reasons, the undersigned concludes that substantial evidence supports the ALJ's credibility determination and that Plaintiff has failed to carry her burden of proving that she is unable to engage in any substantial gainful activity.

17

## VI.    Conclusion

For all the foregoing reasons and cited authority, the court concludes that the decision of the ALJ was supported by substantial evidence and was the result of an application of proper legal standards.   It is, therefore, **ORDERED** that the Commissioner's decision be **AFFIRMED**.   The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner.

**SO ORDERED**, this 16th day of August, 2016.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

18